# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-81307-CIV-ALTMAN/Brannon

**AFFORDABLE AERIAL**
**PHOTOGRAPHY, INC.**,

    *Plaintiff,*

v.

**PALM BEACH REAL**
**ESTATE, INC.,** *et al.*,

    *Defendant.*

_____/

## SUPPLEMENTAL ORDER ON FINAL DEFAULT

We've issued an Order Granting Final Default ("Default Order") [ECF No. 13] in favor of the Plaintiff in this case. But we deferred ruling on the Plaintiff's request for relief and scheduled a hearing on that issue. *See* Default Order at 6. Having held that hearing, we now supplement the Default Order to address the Plaintiff's requests for damages, attorneys' fees, costs, and other relief.

### BACKGROUND

We begin with a brief recap of the facts, which are set forth in greater detail in the Default Order. The Plaintiff—Affordable Aerial Photography, Inc. ("Affordable Aerial")—creates and licenses photographs. *See* Complaint [ECF. No. 1] ¶¶ 2–3, 16–17. The Defendants are Palm Beach Real Estate Inc., a licensed real estate corporation, and Tara Pearl, its owner and broker of record. *Id.* ¶¶ 4–5. The Plaintiff alleges that the Defendants used three of its licensed images without permission and removed the copyright management information ("CMI") from those images. *See generally* Complaint [ECF No. 1]. Although the Defendants were properly served, *see* Return of Service [ECF No. 7], they've refused to appear, answer, or otherwise respond to the Complaint, *see generally* Docket.

The Plaintiff has shown that it's entitled to a default judgment. *See generally* Motion for Default Judgment ("Motion") [ECF No. 12]; Default Order. But it has not clearly established that it deserves

all the relief it seeks. *First*, for the Defendants' copyright infringement, the Plaintiff requested $108,000.00 in statutory damages under 17 U.S.C. § 504(c)(2). That number is based on the following computation: an annual licensing fee of $1,000 per photograph, multiplied by three copyrighted photographs, all multiplied by 36. *See* Motion for Default Judgment ("Motion") [ECF No. 12] at 12–15. The Plaintiff argued for a 6x multiplier based on the "scarcity" of the aerial photographs, *id.* at 12, but did not explain why it was entitled to a second multiplier of 6x (for a total of 36 times its lost licensing fee). *Second,* the Complaint failed to show how long the Defendants had infringed on the copyright of one of the three images, *see* Complaint at Ex. 2, p.7 (showing the unlicensed use of the "Biltmore Work" on the Defendants' website—without any date of publication), making it impossible for the Court to calculate the Plaintiff's lost revenues. *Third*, there was a discrepancy between the Plaintiff's request for $6,196.80 in costs and attorneys' fees, *see* Motion at 14, and its supporting declaration, in which its attorney attested to $488.10 in costs and $3,387.50 in attorneys' fees, *see* Declaration of Joel B. Rothman in Support of Motion for Final Default ("Rothman Decl.") [ECF No. 12-2] ¶¶ 3, 5. *Fourth*, the Plaintiff did not explain why it was entitled to prejudgment interest or how that interest should be calculated. *See generally* Motion.[1]

The Court held a hearing on December 1, 2020 ("Damages Hearing") [ECF No. 17], at which the Defendants did not appear. But the Plaintiff was able to answer some of the Court's questions, and the Court is now satisfied that the record supports the relief set out below.

## THE LAW

The Court may award damages on a default judgment if the record adequately reflects the basis for the award, which can be established through, for example, "detailed affidavits." *Adolph Coors Co.*

---

[1] The Plaintiff also sought $75,000 in statutory damages under 17 U.S.C. § 1203(c)(3) for unlawful removal of CMI and a permanent injunction preventing the Defendant from continuing its infringing activities. *See* Motion at 13–15.

*v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985). District courts have the discretion to decide whether to hold a hearing before entering a final default judgment. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011).

The Copyright Act makes available two forms of damages for a plaintiff who proves copyright infringement: actual or statutory damages. *See* 17 U.S.C. § 504. The copyright owner "is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement[.]" *Id.* § 504(b). But he may, "instead of actual damages and profits," seek to recover statutory damages for "all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just." *Id.* § 504(c)(1). In addition, if the copyright owner "sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." *Id.* § 504(c)(2).

The Digital Millennium Copyright Act—which makes it illegal to "intentionally remove or alter any copyright management information," or to "distribute . . . copies of works . . . knowing that copyright information has been removed or altered without the authority of the copyright owner," 17 U.S.C. § 1202(b)(1), (3)—authorizes actual damages or statutory damages in an amount of not less than $2,500.00 per violation and up to $25,000.00 per violation, *see* 17 U.S.C. § 1203(c)(2), (3)(B).

The Court has substantial discretion to enter a damages award within these statutory limits. *See Cable/Home Commc'n Corp. v. Network Prods. Inc.*, 902 F.2d 829, 852 (11th Cir. 1990) ("[T]he employment of the statutory yardstick, within set limits, is committed *solely* to the court which hears the case, and this fact takes the matter out of the ordinary rule with respect to abuse of discretion." (emphasis added)). To determine the appropriate amount of statutory damages, courts have

considered the following list of (nonexclusive) factors: (1) the expenses the defendant saved and the profits it reaped; (2) the revenues the plaintiff lost; (3) the value of the copyright; (4) the deterrent effect on others; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing records from which the court can assess the value of the infringing material the defendant produced; and (7) the potential for discouraging the defendant. *Bork v. Tran Huong Quynh*, 2020 WL 4474485, at *2 (M.D. Fla. Aug. 4, 2020); *see also Walt Disney Co. v. Video 47, Inc.*, 972 F. Supp. 595, 603 (S.D. Fla. 1996) ("[C]ourts consider the following factors: expenses saved and profits gained by the defendants in connection with the infringements; revenues lost by plaintiffs as a result of defendants' conduct; and the infringer's state of mind, that is, whether willful, knowing, or merely innocent. . . . Moreover, the court should consider the purposes of the Copyright Act, including restitution to prevent unjust enrichment, reparation of injury, and deterrence of further wrongful conduct by the defendants and others." (internal citation omitted)).

While considering those factors, courts must also appreciate that "statutory damages are not intended to provide a plaintiff with a windfall recovery; they should bear some relationship to the actual damages suffered." *Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC*, 554 F. Supp. 2d 1303, 1313 (M.D. Fla. 2008).

## ANALYSIS

The Defendants intentionally infringed on the Plaintiff's copyrighted photographs and removed the products' CMI (likely to help them conceal or facilitate their infringing activities). *See* Default Judgment at 5 (finding that the Defendants acted willfully, not innocently). The Defendants then ignored the Plaintiff's demand to cease the infringing activities, *see id.*, as well as a summons to appear before this Court, *see generally* Docket. Although they are a licensed real-estate business and its broker of record, the Defendants have demonstrated a callous indifference to the Plaintiff's property rights and this country's judicial process. The Court therefore finds that the following relief is

4

appropriate here.

## I. Copyright Infringement: Statutory Damages under § 504

The Plaintiff has elected to pursue statutory damages, arguing that "actual damages are insufficient due to Defendants' refusal to appear and participate in discovery[.]" Motion at 11. The Court agrees. When defendants fail to appear and participate in discovery, it becomes difficult to calculate actual damages—which, in copyright cases, can include disgorgement of the defendants' ill-gotten gains. *See* § 504(b) (permitting disgorgement of defendant's profits); *UMG Recordings, Inc. v. Roque*, 2008 WL 2844022, at *2 (S.D. Fla. July 23, 2008) ("[B]ecause [the plaintiffs] would have difficulty submitting evidence of actual damages due to [the defendant's] failure to defend the action, statutory damages offer the [c]ourt discretion to enter judgment in spite of the lack of such evidence."). On this record, we find that **$30,000** is an appropriate award of statutory damages in this case.

We begin with the revenues the Plaintiff lost as a result of the Defendants' infringing activities. *See Walt Disney Co.*, 972 F. Supp. at 603 (explaining that courts should consider, among other things, "revenues lost by plaintiffs as a result of defendants' conduct"). The Plaintiff's sole proprietor, Robert Stevens, submitted an affidavit, in which he attested that Affordable Aerial would have charged $1,000 per year for each of the three photographs the Defendants used without permission. *See* Declaration of Robert Stevens ("Stevens Decl.") [ECF No. 13-1] at ¶¶ 10, 16. The Court finds that the Defendants infringed on the "Sunrise Work" for three years, *see* Complaint at Ex. 2, p.2 (showing an infringing social media post from March 24, 2017), and infringed on the "3813 N Ocean Work" for 2.5 years, *see id.* at Ex. 2, p.4 (showing an infringing advertisement from July 2018). As for the third work, the "Biltmore Work," *see id.* at Ex. 2, p.7, the Plaintiff discovered the infringing post on the Defendants' website in December of 2018, *see* Damages Hearing. Accordingly, the Court finds that the Defendants have used the Biltmore Work for two years. In total, then, the Plaintiff lost $7,500 in revenue: ($1,000 annual fee x 3 years) + ($1,000 annual fee x 2.5 years) + ($1,000 annual fee x 2 years).

The Plaintiff's request for $108,000 in total statutory damages appears to be based on the $1,000 annual licensing fee for three photographs, a 6x "scarcity" multiplier, and then *another* 6x multiplier (i.e., $1,000 x 3 x 6 x 6). *See* Motion at 10–12. Based on the Court's calculation of the lost revenue year *per year*, however, that total would amount to a 14.4x multiplier *on top of* the Plaintiff's lost revenues.

In its Motion, the Plaintiff points out that Mr. Stevens used a "unique capture technique" to take these three aerial photographs. *See* Motion at 9–10. He had to monitor atmospheric and weather conditions, scout the locations, obtain authorizations to access private property, and—after all that— enhance the photographs in post-production, using advanced photo exposure and special software. *Id.* Although the Court finds that, for those reasons, a scarcity multiplier is warranted, a 14.4x multiplier is still excessive and would create a windfall for the Plaintiff.

The Plaintiff relies primarily on *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376 (3d Cir. 2016), where the plaintiff alleged copyright infringement of images of bone marrow stem cells taken with an electron microscope—a "highly technical type of photography" that "[o]nly a few photographers engage in[.]" *Id.* at 382. At trial, the plaintiff's damages expert testified that "a multiplier of three to five times the benchmark [licensing fee] for scarcity and 3.75 to 8.75 times for exclusivity" were appropriate, and he "opined that the fair market value for use of the images would be determined by multiplying these figures by the benchmark sum of $215,767.65." *Id.* at 394. The jury returned a verdict of $1.6 million in damages—about a 7.4x total multiplier—and the Third Circuit affirmed, concluding that the award was "tethered to the record" and that the district court did not abuse its discretion in denying a new trial on the basis of a "grossly excessive jury verdict." *Id.*

Courts in this Circuit, however, have declined to apply *Leonard*'s 7.4x multiplier to cases like ours, which don't involve microscopic photography. In *Stross v. Roberson*, 2019 WL 7562382 (M.D. Fla.

6

Oct. 3, 2019),[2] for example, the court distinguished *Leonard* and applied a 1.5x multiplier to a licensing fee for standard real estate photography. *Id.* at *4, 6. Other courts have applied higher scarcity multipliers—between three to six times the licensing fee—to reflect the market value of specialized photography. *See Corson v. Gregory Charles Interiors, LLC*, 2020 WL 6323863, at *2 (S.D. Fla. Aug. 7, 2020) (applying a 4x scarcity multiplier for photography involving "professional strobe lighting," custom lighting setups, and other methods for "high-end architectural photography"); *Affordable Aerial Photography, Inc. v. VisitWPB.Com, Inc.*, at *3 (S.D. Fla. Apr. 23, 2018) (applying a 6x multiplier in a case involving this same plaintiff); *cf. Stockfood Am., Inc. v. Fernando Arcay Special Events Corp.*, 2019 WL 9904155, at *3 (S.D. Fla. Dec. 31, 2019), *report and recommendation adopted*, 2020 WL 4820472 (S.D. Fla. Jan. 21, 2020) (declining to apply a scarcity multiplier, but finding that an award of three times the licensing fee for food-related photographs was appropriate given the defendant's willful misconduct).

With this framework in mind, we conclude that an award four times the Plaintiff's licensing fee is warranted. The Plaintiff's aerial photography involved special skills and equipment, attention to weather patterns, access to private property, and careful editing. While the 4x multiplier reflects the value of the Plaintiff's images, it also provides much-needed deterrence, both specific and general, and adequately accounts for the Defendant's willful infringement. *See Bork*, 2020 WL 4474485, at *2 (explaining that, in setting statutory damages, courts should consider the deterrent effect on others, whether the defendant's conduct was innocent or willful, whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material the defendant produced, and the need to discourage the defendant). This award is well within the statutory maximum of $150,000 for willful infringement, *see* § 504(c)(2), and (thus) would not create a windfall for the Plaintiff.

---

[2] *Report and recommendation adopted sub nom. Stross*, 2019 WL 5303676 (M.D. Fla. Oct. 21, 2019).

## II. CMI Removal: Statutory Damages under § 1203

The Plaintiff has elected to pursue statutory damages for the Defendants' CMI removal. *See* Motion at 12. The statutory minimum for CMI removal is $2,500 per violation, and the statutory maximum is $25,000. *See* § 1203(c)(3)(B). Again, courts have "wide discretion" to set a statutory damages award within that range. *See McPherson v. Seaduced, LLC*, 2015 WL 1811029, at *4 (M.D. Fla. Apr. 21, 2015) (citing *Cable/Home Commc'n*, 902 F.2d at 852). The Defendants removed the Plaintiff's CMI on three separate occasions, *see* Default Judgment at 5; Stevens Decl. at Ex. 2, and the Court finds that $10,000 per violation—for a total of **$30,000** in statutory damages—is appropriate in these circumstances.

Mr. Stevens attested that the removal of the CMI from his copyrighted images facilitates further infringement by third parties, discourages prospective clients from paying Affordable Aerial's licensing fees, prevents Affordable Aerial from controlling the use and transmission of its photographs, and increases the likelihood that the three infringed photographs will become "orphan works." Stephens Decl. ¶¶ 21–24. Moreover, for the reasons set out above, the Court finds that a $30,000 award will help deter the Defendants (and others) from similarly illegal conduct.

## III. Interest

Federal law permits courts to award prejudgment interest in civil cases. *See* 28 U.S.C. § 1961 (permitting interest in a civil case and providing a mode of computation). The Copyright Act does not specify whether a copyright owner is entitled to recover interest on an award of actual or statutory damages, and "a request for prejudgment interest on an award of damages and profits will be directed to the court's discretion." 50 AM. JUR. PROOF OF FACTS 2d 263 (originally published in 1988); *accord* GLADSTONE ET AL., CIVIL REMEDIES, PATENT LAW BASICS § 4:8 (Nov. 2020 Update).

Although the Plaintiff requests prejudgment interest, *see* Motion at 15, it does not explain why it is entitled to interest or how that interest should be calculated, *see generally id*. Nor (notably) was the

Plaintiff able to articulate a colorable basis for an award of prejudgment interest in response to the Court's questions at the Damages Hearing.) And, since the Plaintiff bears the burden of establishing its claims to relief, we'll **DENY** this request. *See Stross*, 2019 WL 7562382, at *4 (denying prejudgment interest where the plaintiff "provide[d] no argument or authority explaining why he [was] entitled to such relief, [or] . . . a computation of the prejudgment interest sought," and noting that "[i]t is the [p]laintiff's burden, not the [c]ourt's, to demonstrate that he is entitled to the relief sought"); *accord McKennon v. NewsCastic, Inc.*, 2018 WL 5847424, at *7 (M.D. Fla. Sep. 7, 2018), *report and recommendation adopted by*, 2018 WL 5840687 (M.D. Fla. Nov. 8, 2018) (denying a similarly deficient request for prejudgment interest).

### IV. Attorneys' Fees and Costs

The Copyright Act permits courts to award reasonable attorneys' fees and costs to the prevailing party. *See* 17 U.S.C. §§ 505; 1203(b)(5) (permitting costs and fees to prevailing party in the court's discretion); *see also Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 832 (11th Cir. 1982) (explaining that the only preconditions to an award of fees in a copyright case are that "the party receiving the fee be the 'prevailing party' and that the fee be reasonable").

The Plaintiff asks for $6,196.80 in fees and costs. *See* Motion at 14. But, as noted, the supporting affidavit shows only $488.10 in costs (for a process server, filing fees, and priority mail) and $3,387.50 in fees (for the work of four attorneys, two paralegals, one investigator, and one legal assistant)—for a total of $3,875.60. *See* Rothman Decl. ¶¶ 3, 5. At the Damages Hearing, the Plaintiff's attorney represented that the discrepancy was an oversight and that the Rothman Declaration accurately represented the firm's fees and costs. We'll thus **GRANT** the Plaintiff's request in the amounts set out in that declaration. *See Markos v. Yacht Charters of Miami.com, LLC*, 2019 WL 8989936, at *4 (S.D. Fla. Oct. 2, 2019), *report and recommendation adopted*, 2019 WL 8989935 (S.D. Fla. Oct. 23, 2019) (following the amount set out in a supporting affidavit, rather than the different amount

9

requested in the motion). The Court finds that the amounts outlined in the Rothman Declaration--$488.10 in costs and the $3,387.50 in attorneys' fees—are reasonable. *Cf. McPherson*, 2015 WL 1811029, at *5 (awarding the requested $7,100.00 in attorneys' fees and $998.00 in costs in a similar photography-infringement case). We'll thus award a total of **$3,875.60** in fees and costs.

## V.     Permanent Injunction

To obtain the injunctive relief it seeks, the Plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Peter Letterese & Assocs., Inc. v. World Institute of Scientology Enters.*, 533 F.3d 1287, 1323 (11th Cir. 2008). Courts regularly issue injunctions under § 502 to preserve the public interest in upholding copyright protections. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."); *see also Arista Records, Inc. v. Beker Enterprises*, Inc., 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003) ("Injunctions are regularly issued pursuant to the mandate of Section 502, because the public interest is the interest in upholding copyright protections." (internal quotation marks omitted)); *Schwabel v. HPT Serv., LLC*, 2018 WL 4782328, at *2, 6 (M.D. Fla. Sept. 6, 2018), *report and recommendation adopted*, 2018 WL 4775135 (M.D. Fla. Oct. 3, 2018) (finding that a travel-landscape photographer was entitled to an injunction to prevent the defendant from committing further infringement).

Regarding the first two factors, the Court finds that the Defendants are causing—and unless enjoined and restrained by this Court, will continue to cause—irreparable injury to the Plaintiff. That harm, moreover, cannot be adequately compensated for by monetary damages alone. Notably, "[i]n copyright cases, irreparable harm is presumed on a showing of a reasonable likelihood of success on

the merits." *Arista Records*, 298 F. Supp. 2d at 1314 (S.D. Fla. 2003) (citing *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1109 (9th Cir. 1998)). And so, on a default judgment, a plaintiff "need not show irreparable harm, as the default against [the defendants] satisfies the element of success on the merits." *Id.* (quoting *Sony Music Entertainment, Inc. v. Global Arts Prod.*, 45 F. Supp. 2d 1345, 1347 (S.D.Fla.1999)). Presumptions aside, the Plaintiff attests that the Defendants' infringing activities discourage prospective clients from paying its licensing fees, prevent the Plaintiff from controlling the use and transmission of its photographs, and increase the chances that the three infringed photographs will become "orphan works." Stephens Declaration ¶¶ 21–24. Money damages—without more—cannot adequately remunerate the Plaintiff for these harms.

The third factor likewise supports an injunction. So long as the Defendants continue their infringement, the Plaintiff faces a significant risk of stolen sales, lost customers, and diminished reputation. By contrast, the Defendants face no hardship from an injunction prohibiting their unlawful activities. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290–91 (S.D. Fla. 2016) ("Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which is an illegal act.").

The fourth factor—the public interest—also favors a permanent injunction. *See Arista Records*, 298 F. Supp. 2d at 1314 (explaining that "the public interest is the interest in upholding copyright protections" (internal quotation marks omitted)). An injunction, after all, is the best way to protect the consuming public from being misled by the Defendants' infringing activities. *See Nike, Inc., v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.").

We'll therefore issue a **Permanent Injunction** against the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in

active concert and participation with them, prohibiting them from:

1. Directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photographs or to participate or assist in any such activity; and

2. Directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

\* \* \*

The Court hereby **ORDERS and ADJUDGES** that the Defendants are liable to the Plaintiffs for the amounts set out in this Order, for which sums let execution issue. A Permanent Injunction is hereby entered against the Defendants as set forth in this Order. The Court retains jurisdiction to enforce this Final Default Judgment and Permanent Injunction.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 6th day of July 2021.

                                                 **ROY K. ALTMAN**
                                                 **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record